IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 09-CR-23 GGH |
| Plaintiff, | |
| vs. | ORDER |
| JORDAN C. CRITTLE, | |
| Defendant. | |

*Introduction and Summary*

   Defendant, Jordan Crittle, has been accused by information of possession of a controlled substance (marijuana) within the El Dorado County National Forest in violation of 21 U.S.C. § 844(a). Defendant (hereafter "Crittle") moved to suppress the evidence of marijuana found in the vehicle in which he was riding, as well as statements derived from the seizure. The undersigned felt the need for an evidentiary hearing which

///

1

was held on May 4, 2009.  For the reasons set forth below, the motion is denied.

*Facts*

Crittle, and two others, had stopped their trip to Lake Tahoe to take pictures at Tells Creek Bridge within the El Dorado National Forest.  Forest Service Officer Marcus happened upon these persons, and noticed an expired registration sticker on the their vehicle.  Officer Marcus approached the group with his hand on or about his weapon holster.  He asked who was the registered owner of the vehicle and Brian Hatchett stated that he was the owner.  Mr. Hatchett was asked to retrieve his registration from the vehicle.  After a while, Hatchett handed Marcus a stack of papers, but none evidenced a current registration.

More or less at the same time, Marcus asked Hatchett for his driver's license.  Although Hatchett claimed ownership of the vehicle, he disclaimed driving it as he did not have a valid license.  Hatchett pointed to Danielle Cerda as the driver, but it turned out that she did not have a valid license either.  She was ultimately given notice that her license had been suspended.  Finally, a third member of the group was found to have a valid license, and it was he who finally claimed to be the driver.

During these events, Marcus had inquired of his dispatch certain information concerning driving privileges of members of the group.  It is unclear from the facts precisely how long it took dispatch to look up the requested information and relay it to Marcus in the field, but it may well have been

2

approximately thirty minutes. <u>See</u> Govt. Exhibit 1. At one point, Marcus had called for back-up because he believed that the group was becoming hostile towards him; the group believed just the opposite – that Marcus was overbearing in his attitude and questioning. Undoubtedly, the interaction between the group and Marcus added to the time of the stop.

Meanwhile, Hatchett, during the time at which he was attempting to locate proper registration within his car, was asked by Marcus whether there were any weapons or contraband, such as controlled substances, in his car. Hatchett initially responded that there were not. As Hatchett was again searching for the registration papers, he had opened up the front passenger door. Marcus was proximate to the door opening such that he could see the pocket area common to many vehicle doors. Marcus saw in the door pocket a blue pill bottle with a label upon which appeared a "happy face" smoking a marijuana joint. Also, the label contained a reference to the authorizing statute for medical marijuana, but it appears from the facts that Marcus did not see that reference until later. He did initially see the word "Budget" and a barcode on the bottle. Marcus right away believed this pill bottle to be consistent with a container in which marijuana could be found.[1]

---

[1] In his declaration accompanying the government's opposition to the motion to suppress, Marcus stated that he initially observed the group with signs of marijuana intoxication. However, this fact was never set forth in Marcus' after-the-fact arrest report. At evidentiary hearing, Marcus disclaimed that he relied on this observation as a reason to take the pill bottle from the door. The undersigned has disregarded the claimed

3

Marcus retrieved the bottle from the opened door's pocket. He confirmed his belief that the bottle contained marijuana. Hatchett again denied having any drugs or contraband in his car, but Hatchett did say that the bottle contained his friend's medicine. Defendant Crittle then acknowledged that the bottle was his. After further questioning and handing over several medicinal marijuana cards, CRITTLE retrieved additional marijuana and paraphernalia from the vehicle. Crittle exclaimed his belief that possession of medicinal marijuana was not a crime. He was cited for possession of marijuana in violation of 21 U.S.C. § 844(a), a misdemeanor.[2]

The entire stop, including questioning, getting information from dispatch, writing notices and citations took approximately an hour and twenty minutes.

*Discussion*

There is no doubt that Marcus was justified in initially investigating the traffic law violation of improper registration. The registration sticker on the vehicle was expired. Despite the various approaches urged to the court for resolution of this motion to suppress, the overarching issue was the amount of time it took to resolve those registration and other traffic law issues, and whether the traffic law investigation time expended up to seeing the pill bottle was observation of intoxication symptoms.

---

[2] Hatchett was cited for a false statement, but this charge is not at issue here.

4

excessive such that the initially appropriate stop had blossomed into an unlawful seizure. The questioning of Hatchett prior to discovery of the bottle does not play into Crittle's case in that no information was given by Hatchett as a result of such questioning which led to the discovery of the pill bottle.

This case is controlled by <u>Arizona v. Johnson</u>, __U.S.__, 129 S.Ct. 781, 788 (2009), in which the Supreme Court held:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. See *Brendlin*, 551 U.S., at 258, 127 S.Ct. 2400. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. See *Muehler v. Mena*, 544 U.S. 93, 100-101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005).
>
> In sum, as stated in *Brendlin*, a traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will. See 551 U.S., at 257, 127 S.Ct. 400.

The court sees no difference in this case from the garden variety traffic stop, except that the car was already at rest when the officer approached the group in his investigation of a possible traffic law violation. Not all traffic law violations need be performed while the car is moving, e.g., a person can be charged with DUI even in a parked car; parking

5

tickets are by definition given to an already stopped vehicle. In terms of whether the persons involved in the stop were free to leave, there is simply no way to distinguish this situation from one where the very first event was the stopping of the car. In this case, everything proceeded in a manner indistinguishable from an ordinary traffic stop in which the vehicle was initially stopped by the police. The initial encounter was occasioned by the officer's suspicion of a traffic law violation – expired registration. The group was asked whose car it was, who was driving and the like. Identification was retained. Dispatch was asked to relay information about motor vehicle and driver's license status.

Therefore, the government is in error when it contends that a reasonable person would have felt free to leave in this situation while the potential vehicle law violations were being investigated. The persons in this group, including Crittle, were no more free to leave than a suspected speeder who is stopped by the police is free to leave before obtaining permission from the police officer to leave, i.e., the traffic stop is over.

However, as observed in Johnson, the defense is in error when it contends that the only questions that may be asked during a traffic stop, or the only investigation which may take place, must pertain to the traffic stop. As long as the traffic stop is reasonably proceeding to its cite and release, or arrest, conclusion, the police may ask unrelated, criminal law questions,
///

or otherwise unrelated investigations as otherwise appropriate.

Here, the time involved from the initial encounter for purposes of acquiring sufficient information to cite and release for the traffic law violation, expired registration, was somewhat extended. Approximately 30 minutes were involved until such time that the marijuana was discovered.[3] However, other traffic issues were being explored prior to the discovery of the marijuana. The officer needed to obtain dispatch/criminal information history on not only the car owner, but for the first person Hatchett had indicated was driving. For whatever reason, Hatchett handed the officer a stack of papers irrelevant to, or marginally relevant to, the issue of current registration, and was in the process of looking for more information when the marijuana was discovered. The officer had called for back-up occasioned by the charged atmosphere. Prior to the time of the pill bottle discovery, the officer was not conducting an investigation for drug possession, but was awaiting the further search of the car for registration papers by Hatchett.[4]

The undersigned does not find that the traffic stop here had been unduly extended by any investigation unrelated to traffic matters up to the time the marijuana was discovered. Therefore, plain view discovery of the marijuana was proper.

---

[3] The time involved in processing the arrest for the marijuana after its discovery is irrelevant to the pertinent issue of whether too much time elapsed prior to its discovery.

[4] The rather routine question to the car owner about weapons and contraband does not implicate a controlled substance investigation. But even if it does, Johnson permits the question.

7

*Conclusion*

Accordingly, the motion to suppress (Docket # 8) is denied. The trial in this case is set for June 9, 2009 at 9:00 a.m.; trial confirmation is set for May 26, 2009 at 2:00 p.m.

Dated: 05/19/09

/s/ Gregory G. Hollows
United States Magistrate Judge

crittle.